## COOPER v. ALLEN

[No. 288, September Term, 1965.]

*Decided June 3, 1966.*

*Motion for rehearing filed June 29, 1966, denied July 1, 1966.*

The cause originally was argued before PRESCOTT, C. J., and HAMMOND, MARBURY, BARNES and McWILLIAMS, JJ., and CARTER, J., Chief Judge of the Second Judicial Circuit, specially assigned, and reargued before PRESCOTT, C. J., and HAMMOND, HORNEY, MARBURY, BARNES and McWILLIAMS, JJ., and CARTER, J., specially assigned.

*Lloyd A. Dreiling* and *David D. Patton* (on both arguments) for the appellant.

*Leonard A. Orman* (on both arguments), with whom was *David P. Bernstein* on the brief, for the appellee.

HORNEY, J., delivered the majority opinion of the Court. HAMMOND, MARBURY and BARNES, JJ., dissent. Dissenting opinion by HAMMOND, J., at page 14, *infra.*

The unusual question presented by this appeal is whether the driver of a motor vehicle, who had entered a favored highway from an intersecting unfavored one, at a time when no other vehicles were approaching on the through highway, with the intention of making a left turn thereon, failed to yield the right of way to another motor vehicle, which had stopped temporarily, at another intersecting street one hundred and fifty feet from the first intersection, for the traffic signal to change from red to green, and then proceeded on the through highway until it collided with the unfavored vehicle before it had completed the left turn the driver was attempting to make.

The accident occurred in Baltimore City (at night in December of 1962) in the intersection of the unfavored Richwood Avenue with the favored York Road. Richwood Avenue is a one way westbound street ending at York Road. York Road is a boulevard street with street car tracks in the center and two

northbound and two southbound lanes for through vehicular traffic. A stop sign is erected at the Richwood-York intersection. The other intersection at Coldspring Lane and York Road is controlled by automatic traffic signals erected above the north and south bound traffic lanes on York Road.

According to Henry Allen, the unfavored driver, he stopped his pick-up truck when he reached the Richwood-York intersection in obedience to the stop sign. He looked to his left (*i.e.,* to the south) and observed that the traffic signal at the York-Coldspring intersection was red for traffic on York Road. He then looked to his right (*i.e.,* to the north) and saw no traffic coming south on York Road. Upon checking again and seeing that the northbound traffic on York Road had stopped for the traffic signal at Coldspring Lane, he entered the Richwood-York intersection and proceeded to cross it in order to get into a southbound lane of York Road. While he was still in the intersection, and before he had gotten more than about half way across, the truck was struck broadside by Cooper who was driving his automobile north on York Road.

According to Cooper, he stopped for the Coldspring-York traffic signal and when it turned green he proceeded north on York Road at about twenty to twenty-five miles an hour. He was about twenty feet from the Richwood-York intersection when he first saw the Allen truck in his path. Although he applied his brakes, he was unable to stop in time to avoid the accident.

A witness, who was also traveling north on York Road and had stopped in the outside lane next to Cooper at the traffic signal, had seen the Allen truck coming slowly out of Richwood Avenue as the signal was changing from red to green and while the northbound York Road traffic was still motionless. According to the witness, Cooper took off at a high rate of speed when the signal turned to green and was traveling forty-five to fifty miles an hour when he struck the truck which was then almost in the center of York Road.

It was stipulated that York Road at Richwood Avenue is sixty to sixty-five feet wide; that Richwood Avenue is about twenty-five feet in width; and that the distance on York Road between Richwood Avenue and Coldspring Lane is approximately one hundred and fifty feet.

The motions of the defendant for a directed verdict on the ground that the evidence was insufficient to entitle the plaintiff to recover and on the ground that he was contributorily negligent as a matter of law were denied by the trial court. Under the instructions, in which the court, in concluding its remarks to the jury, told it in effect that its verdict should be for the plaintiff or defendant depending on whether it believed that the unfavored driver had entered the Richwood-York intersection when the traffic signal at Coldspring Lane was red or had entered the intersection when the signal was green, the jury returned a verdict in favor of the plaintiff. Following the denial of the motion for a judgment *n.o.v.* or, in the alternative, for a new trial, the court entered judgment on the verdict against the defendant, and he appealed. On appeal, the primary contention is that the plaintiff was contributorily negligent as a matter of law.

Whether the judgment should be affirmed or reversed depends on whether or not the provisions of § 233 of Article 66½, requiring the driver of a vehicle on an unfavored highway or street to come to a full stop at the entrance to a through highway or boulevard and yield the right of way to other traffic approaching on the favored highway or street, should be applied to the unusual facts of this case. We think it is applicable. While the primary purpose of this rule of law (as has been said many times) is to expedite the movement of traffic from one point to another on designated highways or streets, it is apparent that the rule has also had the concomitant purpose of assuring the safety of both the favored and unfavored drivers of motor vehicles. That the defendant was driving on the favored street while the plaintiff was driving on the unfavored street is not in dispute. What is in dispute is whether the plaintiff complied with the obligation of yielding the right of way to traffic on the favored street. The problem with respect to the extent to which an unfavored driver must go in yielding the right of way to traffic on a through highway or street was recently considered by this Court in *Green v. Zile,* 225 Md. 339, 170 A. 2d 753 (1961) and in *Brown v. Ellis,* 236 Md. 487, 204 A. 2d 526 (1964).

In the *Green* case, where the favored driver and owner of

an automobile had sued the unfavored driver of a tractor-trailer and the owner of the tractor-trailer had sued the owner of the automobile as a result of the tractor-trailer being struck by the automobile traveling on the boulevard street onto which the driver of the tractor-trailer was attempting to make a left turn, it was held that the owner of the tractor-trailer could not recover from the owner of the automobile because of the contributory negligence as a matter of law of the driver of the tractor-trailer in failing to yield the right of way at the boulevard street even though he had stopped prior to entering the intersection and was unable to see the favored driver approaching because of a bend in the boulevard four hundred feet away. Of less significance is the fact that the driver of the automobile, who had not seen the tractor-trailer until he was within thirty feet of the intersection, was held to be precluded from recovering as a plaintiff because the jury, to which the question of his contributory negligence was submitted, returned a verdict in favor of the driver of the tractor-trailer.

In the *Brown* case, where the driver of a tractor-trailer was proceeding across a boulevard street and was struck by an approaching automobile he had not seen when he entered the intersection, apparently because the driver of the automobile had not himself entered onto the boulevard street until the tractor-trailer was in the intersection, the truck driver was nevertheless held to be guilty of negligence as a matter of law because, he being the unfavored driver, had failed to yield the right of way to the favored driver, who struck the tractor-trailer as it was crossing the boulevard street.

In both the *Brown* and *Green* cases we relied on the decision in *Shedlock v. Marshall*, 186 Md. 218, 46 A. 2d 349 (1946), and quoted the following excerpt (at p. 235) as controlling:

> "What the statutes, as interpreted by the [previous Maryland decisions on the subject], mean is that a driver who enters, from an unfavored highway, an intersection with a favored boulevard or arterial highway where there are no traffic controls must yield the right of way to all the traffic he finds there during the entire time he is there. If he does not, and a collision

results, he is at fault and cannot recover against the other driver unless the doctrine of last clear chance enters the case. So far as his rights as a plaintiff are concerned, it makes no difference what the other party does in the first instance. He is negligent because he has not yielded the road. Being negligent himself, his action is barred. But when he is made a defendant in an action for damages resulting from the collision, he can always show that the other party was also guilty of negligen[ce] contributing to the accident, and if he succeeds in this, no verdict can be obtained against him. Then both parties are negligent."

See 236 Md. at 494 and 225 Md. at 347-48.

Applying the rule, as quoted above, we come to the same conclusion we reached in *Green v. Zile, supra* (at p. 348 of 225 Md.) that the undisputed facts show that Allen was entering a boulevard highway from an unfavored one controlled by a stop sign; that he did not yield the right of way to Cooper and a collision resulted; that the accident occurred within the intersection; and that no question of last clear chance is raised on appeal. We hold therefore that the failure of Allen to yield the right of way to Cooper constituted contributory negligence as a matter of law.

Inasmuch as no question concerning the doctrine of last clear chance was raised below, the judgment appealed from must be reversed without a new trial.

> *Judgment reversed; appellee to pay
> the costs.*

HAMMOND, J., filed the following dissenting opinion, in which MARBURY and BARNES, JJ., concurred.

The Court of Appeals properly has been zealous to uphold the sanctity of the boulevard law to accomplish its fundamental purposes, although I have at times thought it over-zealous in extending the application of the law to situations it did not seem to me it was intended to apply, as in *Shriner v. Mullhausen,* 210 Md. 104.

The present case is another in which I think the decision

reached by a majority of the Court required an unfortunate stretching of the boulevard rule to cover a situation not within its ambit.

Code (1957), Art. 66½, § 233, provides in paragraph (a) that "the driver of a vehicle shall come to a full stop as required by this article at the entrance to a through highway and shall yield the right of way to other vehicles approaching on said through highway." Paragraph (b) provides the same thing as to a driver who approaches a stop sign guarding a highway which is not a through highway. I take it York Road is in the latter category legally since it certainly is as a fact, being an ordinary main city street on which the free passage of automobiles is very frequently impeded by red traffic lights. However, whether paragraph (a) or paragraph (b) applies is immaterial since both—and the boulevard rule—are predicated on the fact that a vehicle is "approaching" on the favored highway. It is only to an approaching vehicle that the unfavored driver must yield. True, under the gloss the cases have put on the statute the yielding must last throughout the whole passage of the unfavored one across the favored road. Nevertheless, even under the statute as glossed, the duty to yield is only to a vehicle approaching when the unfavored one stops and enters.

In the present case, on his own testimony and that of an unbiased, independent witness, at the times the unfavored driver stopped at the stop sign and then entered York Road, no vehicle was approaching on York Road from either north or south. To the south two automobiles were at a complete standstill in lawful obedience to a traffic light which was red for York Road traffic. Since he entered the favored road when no vehicle was approaching, the unfavored driver violated no obligation under the boulevard law and was rightfully on the favored road. Merely because the traffic light turned a few seconds after he entered and the stopped vehicles then began to "approach" him, the potentially unfavored driver, lawfully where he was, did not come under a new obligation to, in some mysterious way, yield anew the right of way and get out of the path of a speeding driver who, alcoholically stimulated, paid him no heed and blindly crashed into him.

*Green* and *Brown* go to the outermost limits of rationality in applying the boulevard rule but they are distinguishable on the facts. In both, there was in actuality a vehicle approaching when the unfavored driver entered the favored highway and this put him under the full burden borne by an unfavored driver in such case. Here there was in actuality no vehicle approaching when the unfavored truck came into York Road at as favorable and safe an opportunity as one would be likely to get at any York Road intersection unguarded by a traffic light. To put the boulevard burden on him in such circumstances is, in my view, unreasonable and unwarranted by the law. I would affirm. Judge Marbury and Judge Barnes concur.