SUN CAB COMPANY, INC. ET AL. *v.* CUSICK ET AL.

[No. 115, October Term, 1955.]

356

*Decided March 14, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Frederick J. Green, Jr.,* with whom was *James J. Lindsay* on the brief, for the appellants.

*G. C. A. Anderson,* with whom were *Anderson, Barnes & Coe* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was entered in the Superior Court of Baltimore City by Bernice E. Cusick and James B. Cusick, her husband, to recover damages resulting from a collision of two automobiles at the intersection of Patterson Park Avenue and McElderry Street on April 6, 1953.

One of the automobiles, a Chevrolet taxicab, which was owned by Sun Cab Company, Inc., and operated by Stanley P. Skiba, its employee, was traveling north on Patterson Park Avenue, a through highway. The other car, owned by Bertha K. Meyer and Martin T. Meyer, trading as Theodore Meyer Estate, and operated by Theodore H. Lewis, was traveling west on McElderry Street.

The suit was brought against the owner and driver of the taxicab and the owners and driver of the other car. Mrs. Cusick, who was a passenger in the taxicab, sought recovery for the personal injuries she sustained in the collision. Her husband sought recovery for her medical expenses and loss of her services.

Skiba testified that he was driving at the rate of about 25 miles an hour, and that he first saw the other car when

it was about a car length and a half on the other side of the stop sign. He then testified: "When I saw him coming, * * * I figured he was going to stop, but he didn't. I was more than half way across the street. He caught me in the rear door and fender and turned me over."

Lewis admitted that he had driven on McElderry Street before and knew that Patterson Park Avenue was a "stop street." Nevertheless he admitted: "I didn't come to a complete stop. That is where I made a mistake."

Officer Anthony Filipiak, of the Baltimore City Police Department, arriving on the scene about five minutes after the accident, found that the taxicab had made skid marks 80 feet long. He testified that the taxicab continued about 40 feet beyond the point of impact before it came to a stop.

The cab company and Skiba moved for directed verdicts. The Court overruled their motion, and the jury brought in both verdicts, one in favor of Mrs. Cusick for $15,000, and the other in favor of her husband for $2,500, against the owner and driver of the taxicab and the owners and driver of the other car.

The cab company and Skiba thereupon moved for judgments *n. o. v.* or for a new trial. The Court overruled that motion also and entered judgments on the verdicts. The cab company and Skiba then appealed from the judgments, which were subsequently entered to the use of Bertha K. Meyer and Martin T. Meyer, trading as Theodore Meyer Estate, and Theodore H. Lewis.

Appellants contended in this Court, as in the Court below, that there was no evidence of negligence on the part of Skiba legally sufficient to warrant submission of the case to the jury against them.

*First.* It was the contention of plaintiffs that Skiba was driving at an excessive speed. Lewis testified that the cab was going at "a great rate of speed." He admitted, however, that he did not see the cab until it was less than 6 feet from him. While Skiba claimed that he was driving at a speed of only 25 miles an hour, it might, of course, be inferred from the length of the skid marks

that he was driving more rapidly than that.

But whatever was the speed of the cab, Lewis, being the unfavored driver, was required by the mandatory law of the State to stop and yield the right of way. The Maryland Motor Vehicle Law explicitly provides that a driver shall come to a full stop at the entrance to a through highway and shall yield the right of way to vehicles approaching on the through highway. Code 1951, art. 66½, sec. 198.

As we have stated in previous cases, the purpose of this rule, known as the "boulevard law," is to expedite the movement of traffic within and between congested centers of population by setting aside certain highways over which traffic may move without interruption or delay. To accomplish this purpose, the statute dispenses with the right of way rules applicable to public highways generally and gives the right of way to all traffic on the through highway, and makes it the duty of every driver approaching such a highway, before entering it, to stop and yield the right of way to all vehicles approaching thereon. We have pointed out that the purpose of this statute would be frustrated if drivers on the through highway were required to slow down at each intersection.

The law is accordingly established in this State that where the driver of a motor vehicle enters a through highway in disregard of the boulevard law and collides with a vehicle traveling on the through highway, the collision can be attributed only to his negligence. It has been held that where the driver on an unfavored highway is about to enter a through highway designed to speed traffic, his duty to stop and to yield the right of way is so imperative that excessive speed of the driver on the through highway will ordinarily not be considered a contributing factor. *Sun Cab Co. v. Faulkner,* 163 Md. 477, 163 A. 194; *Monumental Motor Tours v. Becker,* 165 Md. 32, 166 A. 434; *Blinder v. Monaghan,* 171 Md. 77, 83, 84, 188 A. 31; *Greenfeld v. Hook,* 177 Md. 116, 125, 126, 8 A. 2d 888, 136 A. L. R. 1485; *Madge v. Fabrizio,* 179 Md. 517, 523, 20 A. 2d 172; *Belle Isle Cab Co. v. Pruitt,* 187

Md. 174, 182, 49 A. 2d 537; *State, to Use of Frizzell v. Gosnell,* 197 Md. 381, 390, 79 A. 2d 530; *Ness v. Males,* 201 Md. 235, 93 A. 2d 541.

In the case at bar the driver of the taxicab had the right to assume that a driver on McElderry Street would stop and yield the right of way to him. There was no traffic light at the intersection, but there was a boulevard stop sign on the northeast corner as well as one on the southwest corner. Lewis did not deny that he had violated the law. If he had stopped, as the law directed, he could have looked out for traffic on the boulevard and could have avoided the accident. He admitted that when he saw the cab he became panicky, and that he put his foot on the accelerator instead of on the brake. Even though the cab may have been traveling at a rapid rate of speed, it was the gross negligence of Lewis, and not the cab's rate of speed, that was the proximate cause of the accident. It would be mere conjecture to say that the cab might not have been struck if its rate of speed had been different.

*Second.* It was also contended by plaintiffs that since one skid mark was east of the center line, while the other was west of it, the cab must have been traveling in or near the center of the street. They claimed that Skiba was driving negligently because he was not traveling upon the right half of the avenue.

The Motor Vehicle Law directs that upon all roadways of sufficient width a motor vehicle shall be driven upon the right half of the roadway, except (1) when overtaking and passing another vehicle proceeding in the same direction, or (2) when the right half of a roadway is closed to traffic while under construction or repair, or (3) upon a roadway divided into three marked lanes of traffic, or (4) upon a roadway designated and sign posted for one-way traffic. Code 1951, art. 66½, sec. 182.

It is an established principle that a driver who fails to comply with Section 182 of the Motor Vehicle Law, which generally requires drivers of motor vehicles to keep to the right of the center of the roadway, is *prima facie*

guilty of negligence where the violation directly and proximately causes a collision resulting in injury, and the burden is then cast upon the driver to overcome the presumption of negligence by showing that he was justified in driving in the center or upon the left half of the road. But we have made it clear that a violation of this rule does not constitute negligence except where it is the direct and proximate cause of the injury. *Kelly v. Huber Baking Co.*, 145 Md. 321, 125 A. 782; *Lusk v. Lambert,* 163 Md. 335, 163 A. 188; *Consolidated Gas, Electric Light & Power Co. v. O'Neill,* 175 Md. 47, 200 A. 359; *Crunkilton v. Hook,* 185 Md. 1, 42 A. 2d 517; *Cocco v. Lissau,* 202 Md. 196, 199, 95 A. 2d 857.

At the trial of this case the cab driver testified that he was driving upon the right half of the avenue, and that he swerved across the center line to try to avoid being struck by the other car. However, even if it is a fact that he was driving in the center of the avenue, he could not be charged with negligence for so doing, because such fact was not the direct and proximate cause of the accident, as there might have been a collision even if the cab had been traveling upon the right half of the avenue. Indeed, if he was driving in the center of the avenue, he was further away from the westbound car and thus not as likely to be struck as he would have been if he were driving upon the right half of the avenue.

*Third.* Plaintiffs contended also that Skiba "failed to avoid the collision because he was not looking." They called attention to Officer Filipiak's testimony that Skiba told him in the hospital about thirty minutes after the accident that he did not see the other car at all. But Skiba, on the contrary, categorically denied on the witness stand that he had made any such statement to the policeman. He swore that he did not remember talking to any policeman at any time after the accident. However, assuming that he did make such a statement, it could not be considered as having any substantive or independent testimonial value. It is an accepted rule that any statement made by a witness prior to the trial is admissible

for the purpose of impeaching the witness, but not as substantive evidence. *Foble v. Knefely,* 176 Md. 474, 485, 6 A. 2d 48, 122 A. L. R. 831; *West v. Belle Isle Cab Co.,* 203 Md. 244, 253, 100 A. 2d 17; 3 *Wigmore on Evidence,* 3d Ed., sec. 1018.

The evidence in this case fails to show that the cab driver could have avoided the accident. We do not question that the cab driver's testimony that he reduced his speed to 2 or 3 miles an hour, and that he did not slam on his brakes but merely tapped them is discredited by the policeman's testimony that the skid marks extended for a distance of 80 feet. But the significant fact is that the length of the skid marks shows that the cab driver applied his brakes and did the best he could to avoid the collision in the several seconds before the impact.

For these reasons we hold that the trial judge erred in overruling appellants' motion for judgments n. o. v. The judgments as to appellants must therefore be reversed.

*Judgments as to appellants reversed without a new trial, with costs.*