# WHEELER TRANSPORTATION CO., INC., ET AL. *v.* KATZOFF

[No. 296, September Term, 1965.]

432

*Decided May 2, 1966.*

The cause was argued before HAMMOND, HORNEY, OPPEN-HEIMER, BARNES and McWILLIAMS, JJ.

*Richard H. Lerch,* with whom was *Lerch & Huesman* on the brief, for appellants.

*Joseph I. Pines,* with whom was *Max R. Israelson* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

Dann T. Katzoff (plaintiff-appellee) brought suit to recover

damages for the injuries he received when he was struck by a school bus owned by the Wheeler Transportation Company and operated by Robert H. Williams (defendants-appellants). The case was tried by a jury. At the close of all the evidence, the plaintiff moved for a directed verdict in his favor on the ground that he, not having contributed to the happening of the accident, was entitled to a judgment as a matter of law. The trial court denied the motion and submitted the case to the jury which returned a verdict in favor of the defendants. The plaintiff then moved for a judgment *n.o.v.*, or, in the alternative for a new trial. The court, in granting the motion, entered a judgment in favor of the plaintiff as to liability and awarded a new trial as to damages, and this appeal followed.

The accident occurred on the one-way street on which the plaintiff resided. The street, running generally north and south, was wide enough (between twenty-seven and twenty-nine feet) to accommodate the parking of automobiles on both sides and leave room for a moving lane of traffic between them. At the time of the accident, the plaintiff, being unable to find a parking place in front of his house in the east side of the street had parked his automobile on the west side, where parking was not permitted, for the purpose of unloading some building material tied to the top of the vehicle. At approximately the same time, the school bus, with several children riding therein, was being operated in a southerly direction on the same street. The day was bright and clear and there was nothing to obstruct the view between the standing automobile and the oncoming school bus.

According to the plaintiff, he got out of the right side of his automobile and, having looked for traffic and seen none, proceeded around the rear of the automobile to the left side to untie a rope fastened to the door handle; while he was untying the rope, he heard a noise, looked up and saw the school bus, which was then two or three "doors" or about forty feet away, bearing down on him; he shouted and put his right hand up, with the palm outward, to indicate that the bus driver should stop, but he kept on coming, with the bus swaying and careening, and without reducing his speed, estimated by the plaintiff at about thirty miles an hour; on seeing the bus continue to

approach him, the plaintiff made an effort to get in front of his automobile, but being unable to do so he squeezed as close as he could to the side of it; and as the bus passed through the space between the plaintiff's automobile and the vehicles parked on the opposite side of the street, it struck the plaintiff, fracturing his pelvis, and then continued on three car lengths before it stopped.

According to the operator of the school bus, he saw the plaintiff along side of the automobile and brought the bus to a dead stop about three car lengths from where the plaintiff was standing in the street; he then saw the plaintiff walk toward the back of his automobile and beckon him on with a wave of the hand; although he could not see the plaintiff along side of the bus, he, believing that the plaintiff had gone on to the pavement, "pulled" the bus off in first gear at a speed of from five to ten miles per hour and as he was doing so, he heard a bump along the side of the bus and stopped about three car lengths past the point of impact; finally, after alternately embracing, rejecting and reembracing a handwritten statement he had given the plaintiff about two months after the accident as to what caused it, he admitted that when the bus was moving forward, the back end had a tendency to run sideways and veer to the right and that he had no control over handling it.

The trial judge, after refusing to grant a directed verdict for the plaintiff, undertook to instruct the jury as to what he then thought were the respective rights of the plaintiff and defendants and submitted the questions of primary and contributory negligence to the jury. When, however, the plaintiff moved for a judgment *n.o.v.*, or, in the alternative for a new trial, the judge, stating that he was "convinced that the verdict of the jury was against the overwhelming weight of the evidence," granted the motion for a judgment *n.o.v.* as to liability and a new trial as to damages because he believed he had made two errors (besides erring in refusing the motion of the plaintiff for a directed verdict at the conclusion of the trial) in the instructions to the jury: (1) in denying the requested instruction of the plaintiff to the effect that there was no legally sufficient evidence to prove that the plaintiff was guilty of any contributory negligence; and (2) in granting the requested instruction of the defendants based

on the premise that the traffic lane, through which the bus passed, was so narrow that there was insufficient room for both the plaintiff and the bus to be in the same part of the lane at the same time.

The primary question presented by the appeal is whether the trial court erred in granting the motion for judgment *n.o.v.* as to liability. A minor problem concerns the consequences of the appellee having failed to take a cross-appeal.

### (i)

In reviewing the granting of a judgment *n.o.v.*, in a case such as this, we must resolve all conflicts in the evidence in favor of the defendants (against whom the ruling was made) and assume the truth of all evidence and such inferences as may naturally and legitimately be deduced therefrom which tend to support the claim of the defendants that they were not liable to the plaintiff. *Kremer v. Fleetway Cab Co.,* 197 Md. 557, 79 A. 2d 853 (1951). And see *Lehman v. Baltimore Transit Co.,* 227 Md. 537, 177 A. 2d 855 (1962) ; *Smith v. Bernfeld,* 226 Md. 400, 174 A. 2d 53 (1961) ; *Campbell v. Jenifer,* 222 Md. 106, 159 A. 2d 353 (1960). Applying the rule to the facts of this case, we find that the entry of judgment in favor of the plaintiff against the defendants on the issue of primary negligence was correct. Not only did the bus driver testify that it was impossible to see from his position in the bus whether the pedestrian had reached a place of safety, but admitted that the bus was in such condition that he could not control the tendency of the back end to run sideways and veer to the right when the bus was moving forward.

The defendants contend that the evidence was not such as warranted finding as a matter of law that the plaintiff was free of all negligence which caused or contributed to the happening of the accident. While contributory negligence on the part of a plaintiff is a defense which a defendant may assert to protect himself from liability, he has the burden of proving such negligence. See *Sears v. Baltimore & Ohio R. R.,* 219 Md. 118, 148 A. 2d 366 (1959) ; *Lindenberg v. Needles,* 203 Md. 8, 97 A. 2d 901 (1953) ; *Goldman v. Johnson Motor Lines, Inc.,* 192 Md. 24, 63 A. 2d 622 (1949). And if the plaintiff's

evidence does not disclose any negligence on his part and the defendant fails to produce evidence warranting a finding of such negligence, the court should either instruct the jury that the plaintiff was not guilty of contributory negligence as a matter of law or not instruct it at all as to such negligence. *Linden-berg v. Needles, supra.* But where, as here, there was some evidence of contributory negligence, the weight and credibility of the conflicting evidence of opposite parties is a jury question, *Sears v. Baltimore & Ohio R. R., supra,* for as was said in the *Lindenberg* case, at pp. 15, 16:

> "Contributory negligence, like primary negligence, is relative, and not absolute, and must be determined by the circumstances of each case. * * *. The conduct of an actor during a sequence of events which culminate in injury is to be tested by comparison with what an ordinarily prudent man would have done or not done under like circumstances. The relative significance of each of the events and of the conduct of the actor, as they occur, is most appropriately weighed by a jury, who, as ordinary men, must determine what was reasonably to be expected."

Since the trial court, in determining whether there was evidence in the case which required the jury to consider the issue of contributory negligence, must view the evidence in the light most favorable to the defendants, on whom rested the burden of showing negligence on the part of the plaintiff, we think the court erred insofar as it held that the plaintiff was not guilty of contributory negligence as a matter of law. In looking at the evidence from the standpoint of the defendants, we are unable to say that a jury could not find or infer negligence on the part of the plaintiff.

(ii)

The appellants (defendants below), by asking that the verdict of the jury in their favor be reinstated by this Court, raises a further problem as to the consequences of the appellee (plaintiff below) having failed to file a cross-appeal. While it is ordinarily true that, absent a cross-appeal, an appellee cannot complain of adverse or erroneous rulings on the evidence and plead-

ings, see *Reece v. Reece,* 239 Md. 649, 212 A. 2d 468 (1965), we do not have to decide in this case whether the appellee-plaintiff had to appeal in order to have the case remanded for a new trial. Maryland Rule 563 c 1, concerning the effect of a reversal on appeal of a judgment *n.o.v.* entered by the trial court, provides in pertinent part that "the Court of Appeals (1) shall remand the case for a new trial if the lower court conditionally so ordered or (2) otherwise may order a new trial or enter such judgment upon the original verdict as justice may require." Since the lower court, in granting judgment *n.o.v.,* gave only partial relief to the parties, the rule requires a reversal of the judgment *n.o.v.,* and a remand of the case for a new trial. At the retrial, the court, in addition to ruling that the defendants were primarily negligent as a matter of law, should instruct the jury as to contributory negligence and require it to determine whether or not the plaintiff was contributorily negligent, and, if they find that he was not, then to allow the plaintiff such damages as will compensate him for the injury he sustained as a result of the accident.

*Judgment n.o.v. reversed and case remanded for a new trial in accordance with this opinion; the costs to abide the outcome of the retrial.*